UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT A. MALESKI,

                Plaintiff,

v.                                                   1:18-CV-1378
                                                 (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | MARY ELLEN GILL, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | HEETANO SHAMSOONDAR, ESQ.<br>JOANNE PENGELLY, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 14.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.    RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1968. (T. 78.) He completed high school. (T. 193.) Generally, Plaintiff's alleged disability consists of lumbar sprain. (T. 192.) His alleged disability onset date is February 24, 2001. (T. 78.)

### B. Procedural History

On September 23, 2014, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 78.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 19, 2017, Plaintiff appeared before the ALJ, Timothy Belford. (T. 25-64.) On September 29, 2017, ALJ Belford issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-24.) On October 3, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 23, 2014. (T. 13.) Second, the ALJ found Plaintiff had the severe impairments of: degenerative joint disease of the thoracic and lumbar spine. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b); except:

no more than frequent pushing/pulling/reaching with the right upper extremity, and nor more [than] frequent handling with the right upper extremity; no more than occasional overhead reaching with the right upper extremity; no more than occasional climbing of ramps, stairs, and ladders; occasional balancing, stooping, kneeling, crouching and crawling; needs to avoid unprotected heights and hazardous moving machinery; only simple, routine tasks with occasional decision making.

(*Id*.)[1] Fifth, the ALJ determined Plaintiff was unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 19.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles; therefore, the ALJ's decision was not supported by substantial evidence. (Dkt. No. 8 at 9-11.) Second, and lastly, Plaintiff argues the ALJ made various legal errors in weighing the opinion of the consultative examiner, Michael Rosenberg, M.D. (*Id*. at 11-13.) Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 13.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues there was no conflict between the vocational expert's testimony and the Dictionary of

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

3

Occupational Titles; and therefore, the ALJ's decision was supported by substantial evidence. (Dkt. No. 12 at 8-9.) Second, and lastly, Defendant argues the ALJ properly weighed the opinion evidence. (*Id*. at 9-12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

4

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

5

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Consultative Examiner, Michael Rosenberg, M.D.

Plaintiff argues the ALJ committed legal error in weighing Dr. Rosenberg's opinion because the ALJ gave the doctor's opinion less weight than the non-examining State agency medical consultant. (Dkt. No. 8 at 11.) Plaintiff also argues the ALJ committed legal error in weighing Dr. Rosenberg's opinion because the ALJ was required to recontact the doctor for clarification before dismissing the opinion as vague. (*Id*. at 11-13.) Here, the ALJ did not commit legal error in affording more weight to the opinion of a non-examining source over an examining source, and further the ALJ was not required to recontact Dr. Rosenberg.

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 416.927(c)(1)-(6).

On March 23, 2015, Dr. Rosenberg examined Plaintiff and provided a medical source statement. (T. 305-308.) Dr. Rosenberg opined Plaintiff had:

> severe restrictions for activities that involve prolonged standing, walking, squatting, kneeling, bending, heavy lifting, and carrying. [Plaintiff] has severe restrictions for carrying heavy objects, performing overhead activity, and activities requiring pulling, pushing, reaching or repetitive use of the arms secondary to [range of motion] of right shoulder which elicits back pain. [Plaintiff] has severe restrictions for activities requiring twisting and turning of the cervical spine, as [range of motion] of his neck elicits back pain.

(T. 308.)

On July 13, 2017, non-examining State agency medical consultant, A. Mamaril, M.D., reviewed Plaintiff's record, including Dr. Rosenberg's examination and opinion, and completed a physical residual functional capacity assessment form. (T. 439-447.) Dr. Mamaril opined Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; and push and/or pull unlimited. (T. 440.) Dr. Mamaril opined Plaintiff could frequently: climb ramps/stairs, balance, and kneel. (T. 441.) He opined Plaintiff could occasionally: stoop, crouch, and crawl. (*Id.*) He opined Plaintiff could never climb ladders, ropes, or scaffolds. (*Id.*) Dr. Mamaril indicated Plaintiff had no limitations in his ability to: reach in all directions; handle; finger; and feel. (T. 442.) He opined Plaintiff should avoid all exposure to hazards. (T. 443.) Dr. Mamaril opined Dr. Rosenberg's opinion was "non specific and vague." (T. 447.) Dr. Mamaril stated he based his medical opinion on Plaintiff's submitted written testimony, records from Olean General Hospital and Jones Memorial Hospital, records from Olean Universal Primary Care, and Dr. Rosenberg's examination. (*Id.*)

The ALJ afforded Dr. Rosenberg's opinion "less weight." (T. 18.) The ALJ reasoned the opinion was not specific, and the provided limitations were vague and not quantified. (*Id.*) The ALJ afforded Dr. Mamaril's opinion "great weight." (*Id.*) The ALJ reasoned Dr. Mamaril reviewed the available medical record, and his opinion was consistent with the record. (*Id.*)

Of note, no treating acceptable source provided an opinion regarding Plaintiff's physical functional work capacity. However, according to treatment notations, Plaintiff underwent a functional capacity evaluation which indicated he could perform "medium level of work for 8 hrs." (T. 319, 414.) The ALJ afforded the opinion "some weight,"

7

reasoning the medical records showed mild degenerative joint disease that could reasonably limit Plaintiff to the light exertional level. (T. 18.)

The record also contained a disability questionnaire completed by Amy Mohr. (T. 298-303.) She opined Plaintiff had no limitations in his ability to stand and/or walk; sit; push and/or pull; or "other" non-exertional limitations. (T. 302.) When asked about Plaintiff's ability to lift and carry, Ms. Mohr checked the box "frequently;" however, she did not specify the maximum number of pounds he could lift. (*Id.*) The ALJ afforded Ms. Mohr's opinion "some weight." (T. 18.) He reasoned that although Ms. Mohr treated Plaintiff, she failed to specify how much weight Plaintiff could lift and carry and she did not state what her limitations were based on. (*Id.*)

First, the ALJ did not commit *per se* legal error in affording more weight to a non-examining medical expert over the opinion of an examining source. It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e). The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record. *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (ALJ was "permitted to consider" the opinion of a non-examining medical consultant "more reliable" than the opinion of a treating source); *see Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations ... permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."); *see Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency

medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *see Stacey v. Comm'r of Soc. Sec. Admin.*, No. 19-108, 2020 WL 61986, at *3 (2d Cir. Jan. 7, 2020) (the unsupported opinion of the non-examining state agency psychologist was not sufficiently substantial to undermine the opinion of the treating source).

Here, the ALJ provided sufficient analysis to support his determination to afford weight to the medical opinions in the record and the ALJ's overall RFC was supported by substantial evidence in the record. Although the ALJ's RFC determination was consistent with Dr. Mamaril's exertional limitations, the RFC also contained greater non-exertional limitations based on other evidence in the record including opinion evidence and objective findings. (T. 15.) Therefore, contrary to Plaintiff's assertion, the ALJ did not commit *per se* legal error in affording more weight to a non-examining source than an examining source.

Second, the ALJ was not required to recontact Dr. Rosenberg. (Dkt. No. 8 at 11-13.) "The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with her own prior opinions and the rest of the record." *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (internal citations omitted); *see Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (ALJ not required to develop the record where the evidence presented is adequate for the ALJ to make a determination); *see also Rebull v. Massanari*, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002) (record was adequate for the ALJ to make a determination and the ALJ was not required to recontact treating source). Here, the record contained opinion evidence provided by Dr. Rosenberg, Dr.

Mamaril and Amy Mohr; treatment records; and hearing and written testimony during which Plaintiff was represented by counsel. Therefore, the record contained sufficient information for the ALJ to make a determination and he was not required to recontact Dr. Rosenberg.

Lastly, Plaintiff's argument, that the ALJ erred in assessing Dr. Rosenberg's opinion because he failed to cite specific evidence to support his determination, is without merit. (Dkt. No. 8 at 12.) "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)). Although the ALJ did not cite specific evidence in the record in his discussion of Dr. Rosenberg's opinion, the ALJ's thoroughly written decision clearly demonstrates the ALJ's reasoning.

The ALJ considered the objective medical findings, including evidence that Plaintiff's MRIs and x-rays were mostly normal and unremarkable. (T. 16-17, 248, 281-282, 294-295, 321, 368-369, 447.) The ALJ considered Plaintiff's treatment and observations from treating sources. (T. 17.) The record indicated Plaintiff displayed "some possible superficial/nonanatomic tenderness and mild overreaction tendencies." (T. 433.) Patrick Carguello, D.O. noted Plaintiff exerted "suboptimal effort" on examination and "there was a significant element of malingering or other form of secondary gain." (T. 248.) The ALJ considered Plaintiff's activities of daily living, including his ability to care for himself and his children. (T. 17, 200-204). Therefore,

although the ALJ did not cite specific evidence in evaluating Dr. Rosenberg's opinion, the ALJ's reasoning can be gleaned from the ALJ's thoroughly written decision.

Overall, the ALJ properly assessed the medical opinion evidence in the record and the ALJ's determination was supported by substantial evidence in the record.

### B. Conflict Between Vocational Expert Testimony and the Dictionary of Occupational Titles

Plaintiff argues the ALJ's RFC included a limitation to occasional overhead reaching with the right upper extremity which conflicts with vocational expert ("VE") testimony that Plaintiff could perform occupations which, according to the Dictionary of Occupational Titles ("DOT"), all required frequent reaching. (Dkt. No. 8 at 9-10.) Plaintiff argues the ALJ failed to resolve this conflict and therefore substantial evidence did not support the ALJ's step five determination. (*Id.*)

To be sure, remand may be necessary where there is an apparent unresolved conflict between the VE's testimony and the ALJ's RFC assessment. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) ("Testimony that a claimant with overhead reaching limitations is capable of performing a job that the *Dictionary* describes as requiring 'reaching,' then, creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony."); *see Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F. Supp. 3d 164, 192 (W.D.N.Y. 2018) (ALJ and VE failed to acknowledge conflict between testimony and DOT and no attempt was made to resolve the conflict).

Here, the VE testified, and the ALJ found at step five, that with the RFC determined by the ALJ and Plaintiff's vocational factors, Plaintiff could perform the occupations of: cleaner, housekeeping (DOT 323.687-014), and assembler (DOT

729.687-010).  (T. 20, 60.)  The RFC, in relevant part, limited Plaintiff to "no more than frequent" reaching with the right upper extremity and "no more than occasional" overhead reaching with the right upper extremity.  (T. 15.)  The occupations of cleaner and assembler require frequent reaching.  DOT 323.687-014, 729.687-010.  Reaching is broadly defined as extending arms and hands in any direction.  *See* DOT, App. C; SSR 85-15.  There is no distinction in the DOT between degrees or direction of reaching, *i.e.*, above the shoulder or above the head and other types of reaching such as forward or downward.

To be sure, there is an apparent conflict between the ALJ's RFC and the occupations provided by the VE.  However, as outlined by Defendant, any conflict was resolved at the hearing.  During his hearing, Plaintiff's counsel specifically inquired into the reaching requirements of the occupations provided by the VE.  (T. 61.)  Plaintiff's counsel asked the VE how much overhead reaching the jobs he provided required, and the VE testified that while the DOT is not specific as to overhead reaching, the jobs identified only required occasional overhead reaching.  (*Id.*)  The VE specifically stated "the DOT isn't really specific regarding [. . .] working overhead.  So I returned jobs that I know overhead use is occasional or less." (*Id.*)  Therefore, any apparent conflict between the VE's testimony and the ALJ's RFC was properly resolved.  The occupations provided by the VE were consistent with the ALJ's RFC and the ALJ's step five determination was therefore supported by substantial evidence.

Overall, the ALJ properly assessed the medical opinion evidence in the record and his RFC determination was supported by substantial evidence.  Any apparent

conflict between VE testimony and the DOT was adequately resolved during the hearing.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 13, 2020

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge